UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

      v.                             CASE NO. 8:26-cr-41-TPB-CPT

JEREMY RYAN

**MEMORANDUM IN SUPPORT OF DEFENDANT'S PRETRIAL RELEASE
SEARCH RESTRICTIONS**

The United States of America, by Gregory W. Kehoe, United States Attorney

for the Middle District of Florida, files this memorandum of law in support of the

Court's implementation of search and posting restrictions placed on the Defendant

during the March 19, 2026, hearing. Doc. 22. These are legal restrictions imposed on

the Defendant during his time under the Court's supervision, and such restrictions do

not violate the First, Fifth, or Sixth Amendments.

## I.      Background

On December 22, 2025, the Defendant was charged by a criminal complaint

within the Middle District of Florida for a violation of 18 U.S.C. § 875(c),

transmitting in interstate commerce a threat to injure. Doc. 1. The Defendant, Victim

1, and Witness 1, engaged in a group texting conversation that initiated on or about

October 10, 2025. *Id*. at ¶ 7. Within two days, the Defendant became increasingly

aggressive and threatening towards Victim 1 and Witness 1 and started sending

unanswered messages that threatened Victim 1, Witness 1, and their families. *Id*. at

¶¶ 8-10. Some of the messages included the following statements: "[Victim 1] and

[Victim 1's wife] got families…Do you really want me to cross that line?" and "[Names of Witness 1's minor children] are safe because I don't involve kids in my affairs…But I also don't drop them so 12-15 years from now that calculus may change…". *Id.* at ¶ 10. Neither Victim 1 nor Witness 1 ever provided the Defendant with the names of their family members or mention the existence of their families to the Defendant. *Id.* at ¶ 12.

In another string of messages sent by the Defendant to Victim 1 and Witness 1 on October 17, 2025, the Defendant continued to threaten and intimidate both Victim 1 and Witness 1. Those messages include: "You're done…I don't fight with violence but I guarantee looking back youll wish I did…Its over…" and "And I rescind my apologies for attacking your family and guarantee every family and friend you or your wife have will feel the heat but you chose this…". *Id.* at ¶ 13.

During these text conversations, the Defendant sent Victim 1 a map depicting directions from the Defendant's location to Victim 1's last known business address, indicating "[w]e aren't real far away…". *Id.* at 14. He also sent Victim 1 a news article discussing the violence of the Crips gang in Los Angeles and detailed a leader of the Crips followed the Defendant on Instagram. *Id.* Victim 1 ceased communication with the Defendant following the receipt of the above-detailed messages. *Id.* at 16. From October 2026 to December 2025, the Defendant continued to harass and threaten Witness 1 and Victim 1 through various messages to Witness 1 and social media posts. The Defendant also contacted the classmates of Victim 1's daughter, slandering Victim 1's name. Victim 1 and their family along with Witness

1 expressed fear of the Defendant.

On January 23, 2026, the Defendant was arrested in the Southern District of California based on the above-detailed complaint and arrest warrant. *United States v. Ryan*, 3:26-mj-139-BJW (S.D. Cal 2026). His Rule 5 proceedings were continued to January 27, 2026, based on a need for medical clearance to attend court proceedings. Doc. 3. On January 30, 2026, the Defendant was ordered detained based on a motion by the United States that he was a danger to the community and/or a risk of flight.

On February 4, 2026, a federal grand jury within the Middle District of Florida returned an indictment charging the Defendant with one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2). Doc. 3.

On February 19, 2026, the Defendant moved for a reconsideration of his detention status based on his various medical conditions and his apparent inability to be properly treated by the local medical professionals at the jail. The Court allowed the Defendant to be released from custody based on his medical issues and implemented a no-contact order with Victim 1, Witness 1, and their family members; no-doxing of Victim 1, Witness 1, their family members, law enforcement, and the prosecutors; one approved device with computer monitoring, and location monitoring. About one week later, the Court amended the pretrial release conditions to include that the Defendant could not contact the victim's companies or any agencies that the victim's companies contract with.

Following his release from custody, pursuant solely to his medical issues and not any further Court determination that he was not a danger to the community and/or risk of flight, the Defendant used his device, which was being monitored by pretrial services in the Southern District of California, to conduct concerning searches and send concerning messages related to the safety of many people involved in the case, including the Court and prosecutor, as well as Victim 1 and Witness 1.

On March 9, 2026, the Defendant engaged in an Instagram message with another user, during which the Defendant wrote "[p]lus who would we doxx? Technically I'm only banned from doxing prosecutors, law enforcement, or anyone named in the case… Technically…". On March 7, 2026, the Defendant engaged in Instagram message conversations with various users during which he discussed Witness 1's children. On March 4, 2026, pretrial services contacted the Defendant to discuss a post he made on social media directly relating to Witness 1. Witness 1 told pretrial services he made the post with the intention to "out" the victim. When making the post, the Defendant asked ChatGPT if a "post" can be made about someone he is restricted from contacting. This post was made using a fake social media account that did not reflect the Defendant's name. On March 3, 2026, the Defendant was chatting with another individual about Victim 1 or Witness 1's children. The other individual asked if the Defendant had "ever found them to which the Defendant responding by listing some information he previously obtained on the children. On March 2, 2026, the Defendant sent a chat message to another individual discussing Victim 1's residential location.

4

Throughout his searches and messages while being monitored, the Defendant searched the magistrate and district courts' connections to Jeffrey Epstein, the courts' connection to any controversies involving partisanship, and the prosecutor's history of prosecution. On February 28, 2026, the Defendant messaged another individual stating "show up at her door with a fifth of henny in one hand and a meat cleaver in the other and say either way you're mine take your pick." It is unclear who the female is that the Defendant is referring to. He also messaged another individual on the same date stating, "yeah gotta find some work around…It's not against my conditions so just gotta find something this software hasn't blocked" and "technically my conditions only say cannot harass law enforcement and prosecutors."

On March 19, 2026, the Middle District of Florida Magistrate Court held a hearing to address the Defendant's pretrial release conditions. Doc. 22. At the conclusion of the hearing, following oral argument, the Court ordered the Defendant to be prohibited in any searches or postings related to the victim or witness and their family members, law enforcement officials, including the prosecutors and their families, judicial officers in the case and their families, and companies associated with Victim 1 or Witness 1 and agencies with which those companies contract. *Id.* Additionally, the Court ordered the Defendant to be placed on home incarceration for his form of monitoring. *Id.* The Defendant objected to the conditions prohibiting him from posting or searching about any of the above-detailed individuals, alleging it was a violation of his First Amendment rights. The magistrate court ordered supplemental briefing regarding a potential First Amendment violation. Doc. 22. On

March 30, 2026, the Defendant filed a memorandum of law detailing that the restriction on his searches and posts was a violation of his First, Fifth, and Sixth Amendment rights. Doc. 29. The United States files this memorandum of law in response.

## II.   Memorandum of Law

### a.  18 U.S.C. § 3142

Pursuant to 18 U.S.C. § 3142(e), a defendant may be detained pending trial if the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. If a judicial officer determines that release may be appropriate, and there is not a risk of nonappearance or endangerment of the safety of any other person or the community, the judicial officer shall fashion the least restrictive further condition or combination of conditions to reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(c)(1). The judicial officer may at any time amend the order to impose additional or different conditions of release. 18 U.S.C. § 3142(c)(3).

The Defendant was ordered detained in the Southern District of California based on the judicial officer's finding of the Defendant's dangerousness and/or risk of flight. At no point has a judicial officer made a finding otherwise concerning the Defendant's dangerousness and/or risk of flight. The only change in circumstances is that the Defendant was ordered released to be able to properly deal with his medical issues, for which he seemingly was not able to get adequate care in custody pending

trial in the California facility. As such, it is the United States' position that the judicial officer is not bound to implement the least restrictive conditions, as the Defendant still remains a risk of dangerousness and/or flight.

Additionally, based on the language in the governing statute, the judicial officer is at any time able to amend or impose additional or different conditions of release, for which there is no inclusion of caveats or limits to the conditions the judicial officer is allowed to implement. Accordingly, the judicial officer's additional condition limiting the Defendant's ability to post or search any of the parties or their family members who are connected with the case is permissible based on the judicial officer's powers as detailed under 18 U.S.C. § 3142 to create conditions for release as well as based on the judicial officer's review of the case, the Defendant's criminal history, and the Defendant's actions while on pretrial release, all of which were proffered to the judicial officer during the detention hearing in the Middle District of Florida.

### b. First Amendment

The First Amendment to the United States Constitution details "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. Amend I.

Courts have implemented restrictions on a defendant's speech and posting regarding potential witnesses and victims, when the defendant's speech can pose a

significant and imminent threat to the fair and orderly adjudication of the ongoing criminal proceeding. *United States v. Trump*, 88 F.4th 990, 996 (D.C. Cir. 2023). The *Trump* court held that it was legal to prohibit "all parties and their counsel from making or directing others to make public statements about – (1) counsel in the case other than the Special Counsel, (2) members of the court's staff and counsel's staff, or (3) the family members of any counsel or staff member – if those statements are made with the intent to materially interfere with, or to cause others to materially interfere with counsel's or staff's work in this criminal case or with the knowledge that such interference is highly likely to result. *Id*. The court found that the speech in question posed "a significant and immediate risk that (1) witnesses will be intimidated or otherwise unduly influenced by the prospect of being themselves targeted for harassment or threats; and (2) attorneys, public servants, and other court staff will themselves become targets for threats and harassment." *Id*. at 999. The court has an obligation to "take such steps by rule and regulation that will protect [its] processes from prejudicial outside interferences." *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16. L.Ed.2d 600 (1966). To the extent the Defendant argues his speech is protected by the First Amendment, even protected speech may, and sometimes must, be regulated when necessary to protect a compelling government interest, including the fair administration of a criminal trial. *Id*.

The Constitution affords judges broader authority to regulate the speech of trial participants. *See e.g.*, *Seattle Times Co. v. Rhinehart* 467 U.S. 20, 32 n.18, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (noting that "court[s] often find[ ] it necessary to restrict

the free expression of participants" to a trial). The Supreme Court has held that "[n]either prosecutors, counsel for the defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate [the court's] function. *Sheppard*, 384 U.S. at 363, 86 S.Ct. 1507. Courts must be proactive and when warranted "proscribe extrajudicial statements by any lawyer, party, witness, or court official" engaging in "prejudicial" communications. *Id*. at 361, 86 S.Ct. 1507. The law has long recognized the court's authority to control the speech and conduct of defendants in criminal trials when necessary to protect the criminal justice process. *Nebraska Press Association v. Stuart*, 427 U.S. 539, 553-554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

After indictment, criminal defendants are frequently subjected to "substantial liberty restrictions as a result of the operation of our criminal justice system." *United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). A court has authority to restrict trial participants "despite the fact that such restrictions might affect First Amendment considerations." *United States v. Carmichael*, 326 F.Supp.2d 1267, 1279 (N.D.Ala 2004) (citing *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977). A courtroom setting may provide justifications for placing limits on speech that would not otherwise exist in the general marketplace. *Carmichael*, 326 F.Supp.2d at 1279 (citing 1 Rodney A. Smolla *Smolla & Nimmer on Freedom of Speech* § 15:42 (2004)). Such conditions, implemented by judicial officers pursuant to 18 U.S.C. § 3142, commonly include measures that burden criminal defendants' ability to act, associate, and speak. *Trump*, 88 F.4th at 1006. Criminal defendants do not

9

have an unlimited right to speak. *Id*. at 1007. The Supreme Court has instructed courts when they are imposing orders restricting speech about judicial proceedings, they must in all cases consider both "the imminence and magnitude of the danger" to the judicial process that flows from the speech and "the need for free and unfettered expression." *Id*. The *Trump* court held, based on a review of the record before the court, that Trump's speech posed a significant and imminent threat to the fair and orderly adjudication of the criminal proceedings against him, as the record showed Trump repeatedly attacked those involved in his case through threatening public statements as well as messages. *Id*. at 1010.

The law has long recognized the importance of shielding witnesses from external influences that undermine the integrity of the trial process. *Id*. at 1012. A court's prohibition on a defendant's speech will mean little if the defendant can evade the prohibition by making the same statements to a crowd, knowing or expecting that a witness will get the message. *Id*. at 1013. Accordingly, the district court has the authority to prevent a defendant from addressing witnesses through social media postings or other public comments. *Id*.

The Sixth Circuit applied the "clear and present danger" standard when reviewing a "gag order" applicable only to the defendant. *United States v. Ford*, 830 F.2d 596, 597 (6th Cir. 1987). The *Carmichael* court reviewed the *Ford* standard and held that a protective order sought by the United States can be issued if (1) the defendant's conduct poses a serious and imminent risk to the court's ability to conduct a fair trial, (2) the proposed protective order is narrowly tailored, (3)

10

alternatives to the protective order would not be effective, and (4) the order would be effective in achieving the government's objective. *Carmichael*, 326 F.Supp.2d at 1294. The Defendant's case differs from that in *Carmichael*, as the limitations imposed are pursuant to the judicial officer's authority to implement additional conditions of pretrial release, rather than as a result of a government-proposed protective order.

The Court's restriction on the Defendant's speech is appropriate in this case. The Defendant is not subject to the least restrictive conditions because he is still deemed to be a danger to the community and/or risk of flight. Despite that, the Defendant was given less restrictive communication restrictions prior to the Middle District of Florida's amended pretrial conditions, and he continually towed the line of violating the court's conditions. The Defendant addressed the "technicalities" of his inability to dox individuals associated with the case, communicated regarding Victim 1, Witness 1 and their families, used a fake social media account to post about Witness 1, sought information on the prosecutor and the judges involved in the case, and shared a message encouraging another individual to engage in fear tactics against a female involved in the case by showing up at her house with a meat cleaver. These were all communications the Defendant made while knowing his device was being monitored by pretrial services. These communications, and any further public communications regarding the individuals involved in the prosecution, work to incite threats, intimidation, or harassment of those parties that would pose an imminent risk of materially interfering with the cooperation of Victim 1 and Witness 1 as well as the work of counsel and court personnel as they labor to fairly

and orderly adjudicate the criminal proceeding. Restriction on a defendant's communication is appropriate to protect the integrity of a judicial proceeding and is accordingly appropriate in this case.

### c. Fifth Amendment

The Fifth Amendment provides that no individual shall be deprived of life, liberty, or property, without due process of law. U.S. Const. Amend. V. The Eleventh Circuit has evaluated the Fifth Amendment's restrictions on detention conditions; however, there does not appear to be binding or persuasive authority regarding the Fifth Amendment's effect on pretrial release conditions. *Jacoby v. Baldwin Cnty.*, 835 F.2d 1338 (11th Cir. 2016). The Defendant cites the *Jacoby* and *Bell* cases to posit that those standards apply to the implementation of pretrial release conditions. *Id.*; *Bell v. Wolfish*, 441 U.S. 520535 n.16 (1979). There is nothing in either of those cases that indicate those standards or evaluations shall be applied to pretrial release conditions. As such, the Government submits that the Fifth Amendment is not relevant to the Court's determination as to what are appropriate pretrial release conditions for this Defendant.

### d. Sixth Amendment

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have

12

compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. Nowhere in the Sixth Amendment does it provide for a defendant's unlimited right to search for information related to victims and witnesses related to their criminal prosecution. As noted during the Middle District of Florida pretrial conditions modification hearing on March 19, 2026, the Defendant is represented by experienced counsel, with whom he's able to communicate and present any issues he believes need to be explored in order to present a defense. The Defendant's counsel can then conduct the appropriate research based on the Defendant's provided information. There is nothing in the Defendant's pretrial release restrictions that prohibit him from enjoying any of the rights in the Sixth Amendment.

### III.    Conclusion

The prohibition against the Defendant from searching or posting about Victim 1, Witness 1, their families, and law enforcement, including the prosecutors, judicial officers, and their families, serves the legitimate purpose of seeking to maintain the integrity of the judicial process. This prohibition is not a violation of the First, Fifth, or Sixth Amendments, and has been legally imposed.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By:    /s/ *Abigail K. King*
Abigail K. King
Assistant United States Attorney
Florida Bar No. 294963
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Abigail.King@usdoj.gov

**U.S. v. Jeremy Ryan**                    **Case No. 8:26-cr-41-TPB-CPT**

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Stephen Consuegra, Esq.

/s/ *Abigail K. King*
Abigail K. King
Assistant United States Attorney
Florida Bar No. 294963
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Abigail.King@usdoj.gov